**KING & SPALDING LLP**
KERI E. BORDERS (SBN 194015)
kborders@kslaw.com
JOSEPH N. AKROTIRIANAKIS (SBN 197971)
jakro@kslaw.com
MICHAEL D. ROTH (SBN 217464)
mroth@kslaw.com
633 West 5th Street, Suite 1600
Los Angeles, California 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

*Counsel for Chosen Foods, LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NARGUESS NOOHI and RYAN MOST, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHOSEN FOODS LLC,<br><br>Defendants. | Case No. 2:26-cv-11707<br><br>**NOTICE OF REMOVAL BY DEFENDANT CHOSEN FOODS LLC** |

**<u>NOTICE OF REMOVAL</u>**

Defendant Chosen Foods LLC ("Chosen Foods"), through undersigned counsel, removes the above-captioned action from the Superior Court for Los Angeles County to the United States District Court for the Central District of California in accordance with 28 U.S.C. §§ 1332(d), 1441, and 1446.

1. On or around August 27, 2026, plaintiffs Narguess Noohi and Ryan Most sued Chosen Foods in the Superior Court for Los Angeles County, on behalf of themselves and others similarly situated. Compl., ¶¶ 1, 43-45, Prayer for Relief.

2. In accordance with 28 U.S.C. § 1446(a), true and correct copies of the following papers filed in the state court action are attached to this Notice:

(a) Attached hereto as **Exhibit A** is a true and correct copy of the Complaint filed in this action; and

(b) Attached hereto as **Exhibit B** is a true and correct copy of the Summons filed in this action.

(c) Attached hereto as **Exhibit C** is a true and correct copy of the Notice of Case Assignment filed in this action.

(d) Attached hereto as **Exhibit D** is a true and correct copy of the Civil Case Cover Sheet filed in this action.

(e) Attached hereto as **Exhibit E** is a true and correct copy of the Alternative Dispute Resolution Packet filed in this action.

(f) Attached hereto as **Exhibit F** is a true and correct copy of the Court Order Scheduling Initial Status Conference filed in this action.

(g) Attached hereto as **Exhibit G** is a true and correct copy of the Initial Status Conference Order filed in this action.

(h) Attached hereto as **Exhibit H** is a true and correct copy of the Clerk's Certificate of Electronic Service filed in this action.

(i) Attached hereto as **Exhibit I** is a true and correct copy of all other documents served on Chosen Foods in this action.

3. In accordance with 28 U.S.C. §1446(d), Chosen Foods will promptly serve this notice on plaintiffs' counsel and file a copy with the clerk of the Superior Court for Los Angeles County.

4. On September 9, 2026, and in no event earlier than that date, plaintiffs purportedly served Chosen Foods via personal delivery of summons and complaint.

5. Under 28 U.S.C. § 1446(b) and Rule 6, Federal Rules of Civil Procedure, this removal is timely because Chosen Foods removed within 30 days of such service.

6. The time for Chosen Foods to respond to the complaint has not yet expired.

7. As the Supreme Court has explained, Congress enacted the Class Action Fairness Act ("CAFA") to ensure that federal courts hear large class actions with interstate consequences. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013). Where, as here, the amount in controversy exceeds $5 million, a defendant and at least one putative class member are diverse, and the proposed class exceeds 100 members, CAFA confers subject-matter jurisdiction. 28 U.S.C. § 1332(d).

8. The removing party need only provide a "short and plain statement of the grounds for removal" and need not submit evidence with the removal petition. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014) (2014); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).

## VENUE

9. Under 28 U.S.C. §§ 84(a) and 1441(a), venue is proper in the United States District Court for the Central District of California because this Court embraces the Superior Court for Los Angeles County, where this action was pending.

## PLAINTIFFS'ALLEGATIONS

10. In this putative class action under California's False Advertising Law ("FAL"), and Unfair Competition Law ("UCL") and the Minnesota Prevention of Consumer Fraud Act ("MNCFA"), plaintiffs claim that Chosen Foods affirmatively misrepresented the nature and characteristics of its mayonnaise and salad dressing products labeled as "made with 100% Pure Avocado Oil" (the "Products").[1]

[1] The Products include Classic Mayo, Vegan Mayo, Chipotle Mayo, Classic Ranch Dressing, Steakhouse Caesar Dressing, Lemon Garlic Dressing, Zesty Italian Dressing, Greek Artichoke Dressing, and Homestyle Balsamic Dressing. Compl. ¶ 11.

11. Plaintiffs allege that Chosen Foods deceptively labeled the Products as "made with 100% Pure Avocado Oil" when in fact the Products contain diluted or substituted oil that is compositionally inconsistent with avocado oil.

12. Plaintiffs bring this action "on behalf of themselves and all others similarly situated," (Compl. ¶ 43) and define the class as "[a]ll persons within the United States who purchased the Products within five years prior to the filing of the original Complaint through the date of class certification." Compl. ¶ 43. Plaintiffs also define a Minnesota Sub-Class and a California Sub-Class. Compl. ¶¶ 44-45.

13. Plaintiffs request for themselves and the putative class an order certifying the class, injunctive relief, a monetary judgment in an amount to be determined at trial, attorneys' fees & costs, and all just & proper relief. *See* Compl., Prayer for Relief.

**THE PROPOSED CLASS EXCEEDS 100 MEMBERS**

14. Plaintiffs sue on behalf of all persons within the United States who purchased the Products within five years prior to the filing of the complaint. Plaintiffs also allege that "the Class and the Sub-Class are so numerous that joinder of all members is impracticable. On information and belief there are hundreds, if not thousands of individuals in the United States and the state of California and the state of Minnesota who purchased the products within the applicable statute of limitations period." Compl. ¶ 46(a). Common sense and plaintiffs' allegations independently satisfy the requirement to show that the putative class likely exceeds 100 members.

**CHOSEN FOODS IS DIVERSE FROM AT LEAST ONE PUTATIVE CLASS MEMBER**

15. This case satisfies the minimal diversity requirement of CAFA because at least one member of the putative class is a citizen of a state different from the defendant. 28 U.S.C. § 1332(d)(2)(A).

16. Plaintiff Most is a citizen of Illinois and Plaintiff Noohi is a citizen of California. Compl. ¶¶ 5, 6.

17. Chosen Foods is a Delaware limited liability company whose principal place of business is in San Diego, California. Compl. ¶ 7. Accordingly, Chosen Foods is a citizen of both Delaware and California. *See Jack v. Ring LLC*, 553 F. Supp. 3d 711, 715 (N.D. Cal. 2021); *Hurt v. SH Grp. Hotels & Residence U.S. LLC*, 2024 WL 5244725, at *2 (C.D. Cal. Dec. 30, 2024); 28 U.S.C. § 1332(d)(10).

18. Plaintiffs sue on behalf of a class of "[a]ll persons within the United States who purchased the Products within five years prior to the filing of the original Complaint through the date of class certification." Compl. ¶ 43. Plaintiffs also sue on behalf of a Minnesota Sub-Class and a California Sub-Class. *Id.* ¶¶ 44-45.

19. The putative class, composed of "all persons within the United States who purchased the Products" is, by definition, not limited to citizens of the State of Delaware or California.

20. The putative Minnesota Sub-Class, composed of "all persons within the State of Minnesota who purchased the Products" is, by definition, not limited to citizens of the State of Delaware of California.

21. On the face of the complaint, there is diversity between Plaintiff Most and Chosen Foods and there is far more than a reasonable probability that the putative class of nationwide purchasers and the putative sub-class of Minnesota purchasers include citizens of states other than Delaware and California, thereby satisfying the minimal diversity requirements of under 28 U.S.C. § 1332(d)(2).

## THE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION

22. The amount in controversy "is simply an estimate of the total amount in dispute, not a prospective assessment of the defendant's liability." *Lewis v. Verizon Comms., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

23. This case satisfies the amount in controversy requirement under CAFA because the total amount in controversy exceeds the sum of $5 million, exclusive of interests and costs. 28 U.S.C. § 1332(d)(6).

24. CAFA states that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs." *Id*. The United States Supreme Court has instructed that "the statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million." *Standard Fire*, 568 U.S. at 592.

25. "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87-88. The "notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements." *Aria,* 936 F. 3d at 922 (citing *Ibarra v. Manheim Investments, Inc.*, 775 F. 3d 1193, 1197 (9th Cir. 2015)).

26. Plaintiffs do not allege any specific amount in controversy in their complaint. However, the damages sought, attorneys' fees, and the costs of complying with the requested injunctive relief would exceed $5 million.

27. Plaintiff seeks monetary damages on behalf of themselves and putative class members. Plaintiffs request actual and compensatory damages and claim that they "purchased the Products, in lieu of other products, because Defendant labeled the Products as made with 100% pure avocado oil." Compl. ¶ 22. Plaintiffs further state that they "would not have purchased or paid more for the Products" but for the challenged representations. Compl. ¶ 57.

28. Under the theory that plaintiffs would not have purchased the Products but for the alleged misrepresentations, plaintiffs may claim that damages include the entire purchase price. *See, e.g.*, *Spann v. J.C. Penney Corp.*, 2015 WL 1526559, at *6 (C.D. Cal. Mar. 23, 2015) (finding "complete restitution" of the purchase price a viable measure of damages where the plaintiff showed that "every dollar she spent

was as a result of [the defendant's] alleged false advertising"); *Kruger v. Wyeth, Inc.*, 396 F. Supp. 3d 931 (S.D. Cal. 2019).

29. Chosen Foods' revenue from its sales of the challenged products during the class period exceeds $5 million alone.

30. The cost of complying with injunctive relief is also properly included in the amount in controversy. *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 649 (9th Cir. 2016); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018) ("The amount in controversy may include 'damages . . . and the cost of complying with an injunction'"). Here, plaintiffs seek an injunction "prohibiting such conduct by Defendant in the future." Compl., Prayer for Relief.

31. The requested injunction would require Chosen Foods to reformulate its Products or change its marketing and packaging, including by undertaking a package redesign for future packaging. Because the Product is sold nationwide, the label would need to be changed for all Products sold in the United States.

32. Chosen Foods would be required to address current packaging in three different workstreams: (1) unused packaging in Chosen Foods' inventory; (2) finished packaged goods in Chosen Foods' inventory; and (3) finished packaged goods on retail store shelves. To address current packaging that exists in Chosen Foods' inventory, Chosen Foods would need to either destroy its packaging and finished product inventory (resulting in a total loss to Chosen Foods) or would need to revise each and every currently existing label. The time and expense needed to modify labeling that is already in-market (and is no longer in Chosen Foods' inventory) would result in an even more significant cost because the Products are now in stores that are spread across the country.

33. Finally, attorneys' fees are considered in evaluating the amount in controversy. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007). Plaintiffs seek "attorneys' fees, court costs, and other litigation costs." Compl., Prayer for Relief. Here, plaintiffs' counsel will likely incur significant

attorneys' associated with prosecuting the case, including by defending a motion to dismiss, engaging in written discovery, depositions, and expert discovery, defending a motion for summary judgment, and participating in trial.

34. As a result of the above, the amount in controversy from plaintiffs' request for damages, injunctive relief, and attorney's fees on behalf of themselves and the proposed class exceeds $5 million.

**CONCLUSION**

35. Because the amount in controversy exceeds $5 million, because Chosen Foods' citizenship differs from at least one member of the putative class, and because the proposed class exceeds 100 members, CAFA confers subject matter jurisdiction.

36. If any question arises about the propriety of removal, Chosen Foods requests an opportunity to submit briefing and present oral argument in support of removal before an order resolves the question.

37. Nothing about this removal waives (or should be construed to waive) any available right, argument, or objection.

38. Chosen Foods respectfully reserves the right to amend or supplement this notice.

Respectfully submitted,

Dated: October 7, 2026

KING & SPALDING LLP

By: */s/ Keri E. Borders*

KERI E. BORDERS
JOSEPH N. AKROTIRIANAKIS
MICHAEL D. ROTH

Attorneys for Defendant CHOSEN FOODS LLC