# EXHIBIT A

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
23586 Calabasas Rd Suite 105,
Calabasas, CA 91302
Phone: 323-306-4234
tfriedman@toddflaw.com
abacon@toddflaw.com
*Attorneys for Plaintiffs, and all others similarly situated*

**Electronically FILED by Superior Court of California, County of Los Angeles 8/27/2026 9:13 AM David W. Slayton, Executive Officer/Clerk of Court, By J. Covarrubias, Deputy Clerk**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF LOS ANGELES**
**UNLIMITED JURISDICTION**

NARGUESS NOOHI and RYAN MOST, individually, and on behalf of others similarly situated,

Plaintiffs,

vs.

CHOSEN FOODS LLC,

Defendant.

Case No. 26STCV27057

**CLASS ACTION COMPLAINT**

(1) Minnesota Prevention of Consumer Fraud Act, MINN. STAT. §§ 325F.68–325F.70 *et seq*
(2) Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17500 *et seq.*) and
(3) Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq.*)

**Jury Trial Demanded**

(Amount to Exceed $35,000)

Now come the Plaintiffs, NARGUESS NOOHI and RYAN MOST (“Plaintiffs”), individually and on behalf of all others similarly situated, by and through their attorneys, and for their Class Action Complaint against the Defendant, CHOSEN FOODS LLC (“Defendant”), Plaintiffs allege and state as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of the Minnesota Prevention of Consumer Fraud Act,("MNCFA"), MINN. STAT. §§ 325F.68–325F.70 *et seq*., False Advertising Law (Cal. Business & Professions Code §§ 17500 *et seq*., and Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq*, resulting from the illegal actions of Defendant, in intentionally labeling its Products as made with 100% Pure Avocado Oil, when they actually contain a diluted or substituted oil. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## JURISDICTION AND VENUE

2. This class action is brought pursuant to California Code of Civil Procedure § 382. Causes of action in the instant complaint arise under California statutes.

3. This court has personal jurisdiction over Defendant, because Defendant does business within the State of California and County of Los Angeles

4. Venue is proper in this Court because Defendant does business *inter alia* in the county of Los Angeles and a significant portion of the conduct giving rise to Plaintiffs' claims happened here

## PARTIES

5. Plaintiff Narguess Noohi is an individual who resides in Los Angeles County, California.

6. Plaintiff Ryan Most is an individual who resides in Lombard, Illinois.

7. Defendant is a Delaware limited liability company, whose principal place of business is located in San Diego, California.

8. At all times relevant hereto, Defendant was engaged in the marketing and sale of consumer food products.

**FACTS COMMON TO ALL COUNTS**

9. Defendant advertises, markets, sells, and distributes consumer food products throughout Minnesota, California, and the United States.

10. During the Class Period Defendant sold its classic mayonnaise, vegan mayonnaise, lemon garlic dressing, and zesty Italian dressing products (the "Studied Products") labeled, marketed, and advertised as "made with 100% Pure Avocado Oil" but which contained a diluted or substituted oil.

11. On information and belief, Defendant engaged in the exact same mislabeling with regard to all of its products labeled and advertised as "made with 100% Pure Avocado Oil", the ("Class Products") including:

a. Classic Mayo;

b. Vegan Mayo;

c. Chipotle Mayo;

d. Classic Ranch Dressing;

e. Steakhouse Caesar Dressing;

f. Lemon Garlic Dressing;

g. Zesty Italian Dressing;

h. Greek Artichoke Dressing;

i. Homestyle Balsamic Dressing;

12. A study examined whether avocado oil listed as the sole edible oils in commercial chips, salad dressings, and mayonnaise had chemical profiles consistent with authentic avocado oils. [1]

13. Researchers extracted oil from 74 products purchased in 2025–2026 and compared their fatty-acid and sterol profiles with Codex Alimentarius standards. The Studied Products were included in that study, specifically as samples 45, 46, 47, 48, 57, 58, 59, and 60.

14. The study found that the Studied Products contained oils that were compositionally inconsistent with avocado oil.

15. Based on that study of Defendant's Studied Products, Defendant's Class Products either do not contain avocado oil, or contain a avocado oil that has been diluted with another oil.

16. Defendant does not disclose that the Class Products contain any other oils, and instead represents to consumers thought its labeling that the products contain 100% Pure Avocado Oil.

17. Instead, Defendant's Class Products are marketed as made with 100% pure avocado oils and the ingredients lists of the Class Products do not disclose any other oil ingredients.

18. Furthermore, Defendant's website includes webpages for each of the Class Products where Defendant repeatedly emphasizes that the Class Products contain 100% Pure avocado oil instead of other oils.[2]

[1] Natalie Lopez-Alvarez et al., *Authenticity of Avocado and Olive Oils Used as Ingredients in Commercially Processed Foods*, 6 Applied Food Research 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389

[2] Chosen Foods, https://chosenfoods.com (last visited Aug. 19, 2026).

19. On August 17, 2026, Plaintiff Ryan Most purchased a Chosen Foods Classic Mayo made with 100% Pure Avocado Oil Studied Product from a Target located in St. Louis Park, Minnesota.

20. On January 5, 2025, July 17, 2024, and June 11, 2025 Plaintiff Narguess Noohi purchased a Chosen Foods Classic Mayo made with 100% Pure Avocado Oil Studied Product from a Sprouts Farmers Market in Los Angeles via Instacart.

21. When purchasing the Products, Plaintiffs read and relied upon the Products' labeling that stated the Products were made with 100% Pure Avocado Oil.

22. Plaintiffs purchased the Products, in lieu of other products, because Defendant labeled the Products as made with 100% pure avocado oil.

23. Plaintiffs believed that the Products they purchased were made with 100% pure Avocado Oil, not other oils, because Defendant labeled the Class Products as "made with 100% Pure Avocado Oil".

24. Plaintiffs, and reasonable consumers, understand that products labeled as made with 100% pure avocado oil will not contain a substitute oil or diluted avocado oil.

25. The following are pictures of the challenged labeling appearing on the Class Products:


Chosen FOODS
CLASSIC
MAYO
MADE WITH 100% Pure
AVOCADO OIL
Chosen FOODS
Vegan
MAYO
MADE WITH 100% Pure
AVOCADO OIL
Chosen FOODS
CHIPOTLE
MAYO
100% Pure
AVOCADO OIL


Chosen FOODS
CLASSIC
RANCH
DRESSING & DIP
100% Pure
AVOCADO OIL
Chosen FOODS
STEAKHOUSE
CAESAR
DRESSING & MARINADE
100% Pure
AVOCADO OIL
Chosen FOODS
LEMON
GARLIC
DRESSING & MARINADE
100% Pure
AVOCADO OIL
Chosen FOODS
ZESTY
ITALIAN
DRESSING & MARINADE
100% Pure
AVOCADO OIL




26. Persons, like Plaintiffs herein, have an interest in purchasing products that do not contain false and misleading claims with regards to the contents of the Products.

27. By making false and misleading claims about the contents of its Products, Defendant impaired Plaintiffs' ability to choose the type and quality of products they chose to buy.

28. Therefore, Plaintiffs have been deprived of their legally protected interest to obtain true and accurate information about consumer products as required by law.

29. As a result of Defendant's fraudulent labeling, Plaintiffs and the Class Members have been misled into purchasing Products that did not provide them with the benefit of the bargain they paid money for, namely that the Products would be made with 100% pure avocado oil.

30. As a result of Defendant's fraudulent labeling, Plaintiffs and the Class paid a price premium for premium Products, but instead received non-premium Products.

31. Plaintiffs and the Class Members purchased Defendant's Products because Defendant's advertising claimed that the Products were made with 100% pure avocado oil.

32. Plaintiffs and the Class Members have been deprived of the benefit of their bargain, namely, that they would receive Products that were made with only 100% pure avocado oil.

33. Plaintiffs and the Class members paid a price premium to receive premium products based on Defendant's "made with 100% Pure Avocado oil" labeling but instead received non-premium Products that contain diluted or substitute oil.

34. The avocado oil statement on the labels of the Class Products is material to reasonable consumers. Specifically, approximately 88% of surveyed consumers familiar with avocado oil consider avocado oil amongst the healthiest options for cooking oils.[3]

35. Products labeled as containing avocado oil generally command a higher price from consumers. For example, in the study of Avocado Oil products, avocado-oil mayonnaise cost $0.30–$1.63 per ounce versus $0.24–$0.75 for vegetable-oil mayonnaise.[4]

36. As a result of Defendant's use of the "made with 100% pure avocado oil" label, Plaintiffs have paid more for the Class Products than they otherwise would have.

37. Plaintiffs were unaware that the Products contained diluted or substituted oil when they purchased them.

38. Defendant, and not Plaintiffs, the Class, or Sub-Class, knew or should have known that labeling, marketing, and selling the Products as made with avocado oil was false, deceptive,

---

[3] Maria Kalaitzandonakes, Brenna Ellison & Jonathan Coppess, *Fats in the MAHA Era: Consumer Perceptions of Common Cooking Fats*, farmdoc daily, Apr. 9, 2026, at 1, https://farmdocdaily.illinois.edu/2026/04/fats-in-the-maha-era-consumer-perceptions-of-common-cooking-fats.html.

[4] Natalie Lopez-Alvarez et al., *Authenticity of Avocado and Olive Oils Used as Ingredients in Commercially Processed Foods*, 6 Applied Food Research 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389

and misleading, and that Plaintiffs, the Class, and Sub-Class members would not be able to tell the Products they purchased contained diluted or substitute oils unless Defendant expressly told them.

39. Producers of consumer products, like Defendant, use consumer product labeling to increase consumer demand for products based on the perceived features or benefits of the products thereby increasing the price producers can charge for their products and/or the quantity they can sell.

40. Defendant by including "made with 100% pure avocado oil" labeling increased consumer demand for the Products by incentivizing consumers to purchase them to receive desirable product features.

41. However, as described above, the avocado oil in Defendant's Products has been diluted with another oil or has been substituted entirely, and consumers have been therefore deprived of that product feature. As a result, Defendant has been able to sell the Products at a greater price and/or in greater quantity than if Defendant did not include the challenged labeling, but without providing consumers with the promised product feature. Stated otherwise, Defendant coerced consumers to base their purchasing decision in material part on false claims, thereby fraudulently, deceptively, and unfairly increasing consumer demand for the product. Defendant profited from these acts by extracting additional funds from consumers than otherwise would not have been paid for Class Products, and also harmed competitors by luring would-be consumers of competitive products away from law-abiding products that were not so falsely advertised

42. As a result of Defendant's acts and omissions outlined above, Plaintiffs have suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

a. Lost money;

b. Wasting Plaintiffs' time; and

c. Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

## CLASS ALLEGATIONS

43. Plaintiffs bring this action on behalf of themselves and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within five years prior to the filing of the original Complaint through the date of class certification.

44. Plaintiff Ryan Most also brings this action on behalf of himself and all others similarly situated, as a member of the proposed sub-class (the "Minnesota Sub-Class"), defined as follows

> All persons within the State of Minnesota who purchased the Products within six years prior to the filing of the original Complaint through the date of class certification.

45. Plaintiff Narguess Noohi brings this action on behalf of herself and all others similarly situated, as a member of the proposed sub-class (the "California Sub-Class") defined as follows:

> All persons within the State of California who purchased the Products within four years prior to the filing of the original complaint through the date of class certification.

46. The Class and the Sub-Class satisfy all of the requirements for maintaining a class action, specifically:

a. Upon information and belief, the Class and the Sub-Class are so numerous that joinder of all members is impracticable. On information and belief there are hundreds, if not thousands of individuals in the United States and the

state of California and the state of Minnesota who purchased the products within the applicable statute of limitations period.

b. There are questions of fact and/or law which are common to the Class and the Sub-Classes, and which predominate over questions affecting any individual Class or Sub-Class members. These common questions of fact and law include, but are not limited to:

i. Whether Defendant disseminated false and misleading information by claiming the Products were made with 100% pure avocado oil;

ii. Whether the Class and Sub-Class members were informed that the Products contained diluted or substitute oil;

iii. Whether the Products contained avocado oil or a substitute oil;

iv. Whether Defendant's conduct was unfair and deceptive;

v. Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

vii. Whether there should be a tolling of the statute of limitations; and

viii. Whether the Class and Sub-Class members are entitled to restitution, actual damages, punitive damages, and attorneys' fees and costs.

c. Plaintiffs' claims are typical of the Class and the Sub-Class, which all arise from the same operative set of facts and are based on the same legal theories

d. Plaintiffs have no interests adverse or antagonistic to the interests of the other members of the Class and the Sub-Classes.

e. Plaintiffs will fairly and adequately protect the interests of the Class and the Sub-Classes and Plaintiffs have retained experienced and competent attorneys to represent the Class and the Sub-Classes.

f. This class action is a fair and efficient adjudication of the controversy alleged herein. Plaintiffs anticipate that no unusual difficulties are likely to be encountered in the management of this class action.

g. This class action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender. This class action will also permit the adjudication of relatively small claims by many Class and Sub-Classes members who would not otherwise be able to afford to seek legal redress for the wrongs complained of herein. Absent a class action, Class and Sub-Class members will continue to suffer losses of legally protected rights, as well as monetary damages. If Defendants' conduct is allowed proceed to without remedy, Defendants will continue to benefit financially from such conduct.

h. Defendants have acted on grounds generally applicable to the entire Class and Sub-Classes, thereby making it appropriate for the Court to order final monetary, injunctive, and declaratory relief with respect to the Class and the Sub-Classes as a whole.

47. Defendant, its employees and agents are excluded from the Class and Sub-Classes. Plaintiffs do not know the number of members in the Class and Sub-Classes, but believes the

members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

48. The size and definition of the Class and Sub-Classes can be identified by Defendant's own records.

**COUNT I**
**MINNESOTA PREVENTION OF CONSUMER FRAUD ACT,**
**MINN. STAT. §§ 325F.68–325F.70*et seq.***
**(On behalf of the Class and Minnesota Sub-class)**

49. Plaintiff incorporates all of the allegations and statements made in Paragraphs 1 through 48 above as if fully reiterated herein.

50. Plaintiff Ryan Most is a "consumer" within the meaning of Minn. Stat. § 325F.70, subd. 3(b)(1), because he is a natural person.

51. Plaintiffs purchased the Products for personal, family, or household purposes. Plaintiffs' purchase therefore occurred in connection with a sale of merchandise covered by Minn. Stat. §§ 325F.68–325F.70

52. Minn. Stat. § 325F.69, subd. 1, provides:

> The act, use, or employment by any person of any fraud, unfair or unconscionable practice, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

53. Through its representation that the Products were made with 100% Pure avocado oil, Defendant made false promises, misrepresentations, concealments, suppressions, and omissions of material facts, with the intent that Plaintiff Ryan Most rely upon said false promises, misrepresentations, concealments, suppressions, and omissions of material facts.

54. Minn. Stat. § 325F.70, subd. 3(a), provides:

> In addition to the remedies otherwise provided by law, a consumer injured by a violation of sections 325F.68 to 325F.70, in connection with a sale of merchandise for personal, family, household, or agricultural purposes, may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney fees, and receive other equitable relief as determined by the court. An action brought under this section benefits the public.

55. Through the acts and omissions alleged above, Defendant violated the Minnesota Prevention of Consumer Fraud Act, including Minn. Stat. § 325F.69, subd. 1.

56. Defendant failed to comply with Minn. Stat. §§ 325F.68–325F.70 in its transactions with Plaintiffs and members of the Class and Minnesota Subclass.

57. Plaintiffs and members of the Minnesota Subclass were injured by Defendant's statutory violations because they purchased Products they otherwise would not have purchased or paid more for the Products than they otherwise would have paid had Defendant accurately disclosed the Products' contents.

58. This action benefits the public within the meaning of Minn. Stat. § 325F.70, subd. 3(a).

59. As a result of Defendant's violations, Plaintiffs and members of the Minnesota Subclass are entitled to damages, costs and disbursements, costs of investigation, reasonable attorney fees, and such equitable relief as the Court determines appropriate.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for a judgment against Defendant as follows:

a. An order certifying the Class and the Sub-Class and appointing Plaintiffs as Representative of the Class and the Sub-Class;

b. An order certifying the undersigned counsel as the Class and Minnesota Sub-Class Counsel;

c. An order requiring Defendant, at its own cost, to notify all members of the Class and the Minnesota Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d. Judgment against Defendant in an amount to be determined at trial;

e. An order awarding appropriate equitable relief;

f. Judgment awarding Plaintiffs and members of the Minnesota Subclass their costs and disbursements, costs of investigation, reasonable attorney fees, and other recoverable litigation expenses; and

g. Any other relief deemed just and proper by this Court.

**COUNT II**
**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING ACT**
**(Cal. Bus. & Prof. Code §§ 17500 *et seq.*)**
**(On behalf of the Class and the California Sub-Class)**

60. Plaintiffs incorporate by reference each allegation set forth above in paragraphs 1 through 48.

61. Pursuant to California Business and Professions Code section 17500, *et seq*., it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

62. California Business and Professions Code section 17500, *et seq*.'s prohibition against false advertising extends to the use of false or misleading written statements.

63. Defendant misled consumers by making misrepresentations and untrue statements about the Class Products, namely, Defendant sold the Products with labeling claiming the Products were "made with 100% Pure Avocado Oil" and made false representations to Plaintiffs and other putative class members in order to solicit these transactions.

64. Specifically, Defendant claimed the Products were "made with 100% Pure Avocado Oil" when the Products contained diluted or substitute oils.

65. Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiffs and other Class and Sub-Class Members.

66. As a direct and proximate result of Defendant's misleading and false advertising, Plaintiffs and the other Class Members have suffered injury in fact and have lost money or property. Plaintiffs reasonably relied upon Defendant's fraudulent statements regarding the Products, namely that they did not know the Products contained diluted or substitute oils. In reasonable reliance on Defendant's omissions of material fact and false advertisements, Plaintiffs and other Class and Sub-Class Members purchased the Products. In turn Plaintiffs and other Class Members ended up with products that turned out to actually be different than advertised, and therefore Plaintiffs and other Class Members have suffered injury in fact.

67. Plaintiffs allege that these false and misleading written representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

68. Defendant advertised to Plaintiffs and other putative class members, through written representations and omissions made by Defendant and its employees, that the Class Products were "made with 100% Pure Avocado Oil".

69. Defendant knew that the Class Products did in fact contain diluted or substitute oils.

70. Thus, Defendant knowingly sold Class Products to Plaintiffs and other putative class members that were not as advertised.

71. The misleading and false advertising described herein presents a continuing threat to Plaintiffs and the Class and Sub-Class Members in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiffs are entitled to preliminary and permanent injunctive relief ordering Defendant to cease their false advertising, as well as disgorgement and restitution to

Plaintiffs and all Class Members Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for a judgment against Defendant as follows:

a. An order certifying the Class and the California Sub-Class and appointing Plaintiffs as Representative of the Class and the California Sub-Class;

b. An order certifying the undersigned counsel as the Class and California Sub-Class Counsel;

c. An order requiring Defendant, at its own cost, to notify all members of the Class and the California Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d. Judgment against Defendant in an amount to be determined at trial;

e. An order for injunctive relief prohibiting such conduct by Defendant in the future;

f. Judgment against Defendant for Plaintiffs' attorneys' fees, court costs, and other litigation costs; and

g. Any other relief deemed just and proper by this Court.

**COUNT III**
**VIOLATIONS OF UNFAIR BUSINESS PRACTICES ACT**
**(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**
**(On behalf of the Class and California Sub-Class)**

72. Plaintiffs incorporate by reference each allegation set forth above in paragraphs 1 through 48.

73. Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL. Such violations of the UCL occur

as a result of unlawful, unfair or fraudulent business acts and practices. A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

**UNFAIR**

74. California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice." Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiffs reserve the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

75. In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

76. Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiffs and members of the Class. Plaintiffs and members of the Class have suffered injury in fact due to Defendant's decision to sell them fraudulently labeled products (Class Products). Thus, Defendant's conduct has caused substantial injury to Plaintiffs and the members of the Class and Sub-Class.

77. Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Such deception utilized by Defendant convinced Plaintiffs and members of the Class that the Class Products were "made with 100% Pure Avocado Oil" in order to induce them to spend money on said Class Products. In fact, knowing that Class Products, by their objective terms contained diluted or substitute oils, unfairly profited from their sale, in that Defendant knew that the expected benefit that Plaintiffs would receive from this feature is nonexistent, when this is typically never the case in situations

involving consumer products. Thus, the injury suffered by Plaintiffs and the members of the Class and Sub-Class is not outweighed by any countervailing benefits to consumers.

78. Finally, the injury suffered by Plaintiffs and members of the Class and California Sub-Class is not an injury that these consumers could reasonably have avoided. After Defendant, fraudulently labeled the Class Products as "made with 100% Pure Avocado Oil" the Plaintiffs, Class members, and Sub-Class Members suffered injury in fact due to Defendant's sale of Class Products to them. Defendant failed to take reasonable steps to inform Plaintiffs and Class and Sub-Class members that the Class Products contained diluted or substitute oils and are not as advertised as a result. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiffs and the Class members to purchase the products. Therefore, the injury suffered by Plaintiffs and members of the Class is not an injury which these consumers could reasonably have avoided.

79. Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

**FRAUDULENT**

80. California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

81. The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

82. Here, not only were Plaintiffs and the Class and Sub-Class members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is evidenced by the fact that Plaintiffs agreed to purchase Class Products at a price premium even though the Products contained diluted or substitute oils. Plaintiffs' reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiffs. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

83. As explained above, Defendant deceived Plaintiffs and other Class Members by labeling the Products as "made with 100% Pure Avocado Oil" when in fact the Products contain diluted or substitute oils.

84. Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

**UNLAWFUL**

85. California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

86. As explained above, Defendant deceived Plaintiffs and other Class Members by labeling the Products as "made with 100% Pure Avocado Oil" when in fact the Products contain diluted or substitute oils.

87. Defendant used false advertising, marketing, and misrepresentations to induce Plaintiffs and Class and Sub-Class Members to purchase the Class Products, in violation of California Business and Professions Code Section 17500, et seq.

88. Had Defendant not falsely advertised, marketed or misrepresented the Class Products, Plaintiffs and Class Members would not have purchased the Class Products. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiffs and Class Members. These representations by Defendant are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 *et seq*.

89. Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiffs and Class and Sub-Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief. Additionally, pursuant to Business and Professions Code section 17203, Plaintiffs and Class and Sub-Class Members seek an order for public injunctive relief requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for a judgment against Defendant as follows:

a. An order certifying the Class and the California Sub-Class and appointing Plaintiffs as Representative of the Class and the California Sub-Class;

b. An order certifying the undersigned counsel as the Class and California Sub-Class Counsel;

c. An order requiring Defendant, at its own cost, to notify all members of the Class and the California Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d. Judgment against Defendant in an amount to be determined at trial;

e. An order for public injunctive relief prohibiting such conduct by Defendant in the future;

f. Judgment against Defendant for Plaintiffs' attorneys' fees, court costs, and other litigation costs; and

g. Any other relief deemed just and proper by this Court.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and costs to be awarded should Plaintiffs prevail on any

of their claims in this action.

Dated: August 27, 2026

RESPECFULLY SUBMITTED,

LAW OFFICES OF TODD M. FRIEDMAN P.C.

By: ______________________

TODD M. FRIEDMAN, Esq.
Attorney for Plaintiffs